Albert BAUGH, individually, Lue Ethel Roby, individually, Albert Baugh and Ethel Huffman, as special co-administrators of the estates of Tremain Baugh, Sharonda Baugh, Shatoya Baugh, Tyrone Baugh (hereinafter the deceased minor Baugh children), and Varnessa Baugh (hereinafter the deceased mother/spouse or daughter), Annie Ruth Phillips, individually and as special administrator of the estates of Shanika Dacas and Lashawanda Dacas (hereinafter the deceased minor Dacas children), and Angela Von Jefferson Woods, individually and as special administrator of the estates of Sharina Woods, Shawonda Woods, and Randy Woods (hereinafter the deceased minor Woods children), Plaintiffs,

v.

The CITY OF MILWAUKEE, a municipal corporation at 200 East Wells Street, Milwaukee, WI 53203, John Norquist, in his official capacity as mayor of the City of Milwaukee, Lee C. Jensen, individually and officially as Commissioner of Building Inspections, Inspector Carol Maglio, individually, and John Kalwitz (formerly Thomas Donegan), in his official capacity only as president of the Common Council, City of Milwaukee, and (for those sued in an official capacity) all successors and agents in office, Defendants.

Civ. A. No. 88–C–1230.

United States District Court, E.D. Wisconsin.

Aug. 31, 1993.

Gregory Victor, Adoro & Zeder, Miami, FL, for plaintiffs.

Maurita Houren, Asst. City Atty., Milwaukee, WI, for defendants.

### DECISION AND ORDER

TERENCE T. EVANS, Chief Judge.

On June 16, 1993, I issued a lengthy decision and order granting the defendants' motion for summary judgment, 823 F.Supp. 1452. As called for in that decision, a judgment dismissing the case was entered. On June 30, pursuant to Federal Rule of Civil Procedure 59(e), the plaintiffs moved to alter or amend the judgment. They asked me to vacate my decision and recuse myself under 28 U.S.C. § 455(a).[1] Their motion was triggered by footnote 5 of my June 16 decision where I called attention to the fact that one of my law clerks, Judith Donegan, was married to Thomas Donegan, a named defendant in the case. Footnote 5 of my decision said:

---

1. "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).

Mr. Donegan is now a Milwaukee County circuit court judge. He is also married—since June 27, 1992—to Judy Davis Spangler Donegan, my senior law clerk since 1980. Because Judge Donegan is only named as a defendant in his former capacity as the president of the 16–person City of Milwaukee Common Council, I do not deem it necessary that I recuse myself from this case.

In their motion, the plaintiffs "suggest that the mere circumstance in which the Court's senior law clerk is married to a defendant creates an appearance of impropriety that, to preserve the integrity of the judicial system and the public's trust in the judicial process, can only be remedied by vacatur and recusal." For the reasons that follow, the motion is denied.

In support of their motion, the plaintiffs cite *Hall v. Small Business Administration*, 695 F.2d 175 (5th Cir.1983). In *Hall*, the named plaintiff sued her employer, the Small Business Administration, in a title VII class action alleging that the SBA sexually discriminated against her and other female employees in hiring, salary, and promotion. The *Hall* case was tried by a magistrate judge (the parties having previously filed 28 U.S.C. § 636(c)(1) consents) who employed one law clerk. The law clerk previously worked for the SBA but had resigned from that job, claiming in a letter that, like Ms. Hall, she was the victim of sexual discrimination by the agency. The law clerk was also a member of Ms. Hall's certified class in the lawsuit. The law clerk participated in pretrial proceedings in the *Hall* case and sat in court and took notes during the trial. The law clerk also accepted employment as a lawyer in the law firm of the lawyer who represented Ms. Hall. The law clerk's last act while working for the magistrate, just before she left to join Ms. Hall's lawyer's law firm, was to work on the final opinion in the *Hall* case. The Fifth Circuit Court of Appeals held in *Hall* that the magistrate judge, under these facts, should not have heard the case.

To compare what happened here with what happened in the *Hall* case is like comparing apples and Buicks. The *Hall* case must be read in light of its rather startling facts. It does not create a mandatory rule requiring the recusal of the judge whenever a law clerk employed by that judge has a real or possible conflict of interest.

In this district, the judges all employ two law clerks. The normal practice in the district, when a clerk has a conflict (usually when a law clerk has accepted a position with a law firm involved in litigation before the judge), is to have another law clerk take control of the case giving rise to the conflict. The practice is not to have the judge recuse himself. This practice has worked well in the district and, I'm certain, it would be found to be consistent with the concerns expressed in the *Hall* case. *See also In re Allied–Signal*, 891 F.2d 967 (1st Cir.1989) (proper remedy for allegations of law clerks' partiality was to require judge to proceed without clerks rather than to disqualify judge). Moreover, this circuit has understood *Hall* to be a case of *actual* bias of the clerk imputed to the judge, not a mere "appearance" of bias case. *United States v. Murphy*, 768 F.2d 1518, 1539 (7th Cir.1985). To put this matter to rest, I'll now explain how work is allocated to law clerks in my chambers and how it was done in this case.

Assignment of cases to my two law clerks alternates as the cases are sent here by the office of the clerk of courts. Since November 21, 1988, the day this case was filed, this case has been assigned by luck of the draw to my junior law clerk—and I have had four different junior law clerks over those 5 years. The law clerk assigned to this case for the last 2 years has been Margo Kirchner.[2] The plaintiffs' attorneys were familiar with Ms. Kirchner's presence and assignment to this case, as they telephoned her often about procedural matters and the status of pending motions. My law clerks work independently, often unaware of what the other is working

**2.** The other three junior law clerks were Keenen Peck (University of Wisconsin Law School, from the date of the filing of this case until June of 1989), Kim Patterson (University of Wisconsin Law School, from June of 1989 to June of 1990), and John Ward (University of Michigan Law School from June of 1990 to June of 1991).

on or discussing with me. Ms. Kirchner, a 1991 University of Michigan Law School graduate, did all the law clerk work in this case over the last 2 years. The other junior law clerks worked on this case until Ms. Kirchner came here in June of 1991. Ms. Donegan, my senior law clerk, has had *no* involvement with this case.

The plaintiffs request an opportunity to conduct discovery concerning Ms. Donegan's "relationship" to Thomas Donegan and her involvement in this case. Ms. Donegan and Judge Donegan are now married. For almost 4 of the 5 years that this case was before me, Ms. Donegan was actually "Ms. Spangler." She tells me she did not start dating Mr. Donegan until January 1992. They married in June of 1992. "Discovery" into their relationship is not warranted in this case.

I turn now to the most important reason for my decision not to recuse myself—Mr. Donegan is no longer a defendant in the case. Mr. Donegan was named by the plaintiffs as a defendant in the suit *only in his official capacity as President of the Milwaukee Common Council.* That's the exact language the plaintiffs used when they included Mr. Donegan as a defendant in the suit.

Mr. Donegan was not elected to the position of president of the Milwaukee Common Council until April 1988. That means he was not the Common Council president at the time of the fire at 1738 North 23rd Street, Milwaukee, on September 30, 1987, that gave rise to the claims in this case. Mr. Donegan was also named in the plaintiffs' subsequent amended complaint, again in his official capacity only, and *purely for injunctive relief purposes.* He was not named as a policymaker for the City of Milwaukee or its Building Inspection Department. It was never claimed that he was a participant in any of the questioned conduct. He played no actual part in this case other than being a person who held a certain official elected position. The City did not present any affidavits by Mr. Donegan in support of its motion for summary judgment, just as it did not present any affidavits from the other officially named defendants like Milwaukee's mayor, John Norquist.

Mr. Donegan has moved on. In April 1992 his term as Common Council president ended and he took office as a newly elected judge of the circuit court of Milwaukee County. He presently is assigned to children's court. That means that as of April 1992—3 months *before* the plaintiffs filed their July 29, 1992, brief in opposition to the motion for summary judgment and 2 months *before* Mr. Donegan married my senior law clerk—he should have been removed as a defendant in this case, because *even if the plaintiffs had prevailed, they would not have had any claim nor would they be seeking any relief against Judge Donegan.*

In fact, as of April 1992, Judge Donegan was no longer, by operation of law, a party to this suit. Fed.R.Civ.P. 25(d) reads:

When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, *or otherwise ceases to hold office,* the action does not abate and *the officer's successor is automatically substituted as a party....* An order of substitution may be entered at any time, but *the omission to enter such an order shall not affect the substitution.*

So, Mr. Donegan was not really even in this case for the last 17 months. When he was in it, it was only for a very limited purpose, unrelated at all to any acts that he may have taken in the past. As stated in rule 25(d), regardless of the lack of an order of substitution, Mr. Kalwitz, in his official capacity, was automatically substituted when he became Common Council president. The caption of this order has now been properly amended to reflect that change.

One final matter deserves comment. I think that the plaintiffs here have gone a bit overboard in their motion. They assert that the fact that Judge Donegan

no longer sits on the City's Common Council, and that he was named only in his official capacity is irrelevant for these purposes. He still had a substantial stake in the outcome of this case: a determination that the City, and by extension Mr. Donegan, committed race discrimination would affect his reputation, and possibly his judicial or political career.

Motion/brief at 6. Besides being wrong as to the impact of Judge Donegan being named only in his official capacity, the plaintiffs are reaching when they contend that Judge Donegan had any stake whatsoever in the outcome of this case. Because he was brought into the case only for injunctive purposes, he never had any financial stake in its outcome. Because he was not the Common Council president at the time of the fire and because he was not an employee of the Building Inspection Department, whether the department or its inspectors committed racial discrimination back in 1987 could not conceivably affect his reputation.

In sum, I do not believe that my impartiality in this case can **reasonably** be questioned by any **reasonable** person. The case was always assigned to my junior law clerk, it was clear that Mr. Donegan was named only in his official capacity as Common Council president for only injunctive relief purposes and equally clear to Milwaukeeans who pay attention to these things, myself included, that Mr. Donegan has not held that position since April 1992. In rendering my summary judgment decision I never considered Mr. Donegan's being named as a defendant as anything more than perfunctory and out-of-date. The reason that I did not mention the matter of Ms. Donegan's relationship to Thomas Donegan until the decision on summary judgment is, frankly, that it was so insignificant and it was overlooked until late in the process of finishing my decision of June 16, 1993. That's why footnote 5 was inserted into the decision. Also, on most documents submitted to me—and even on orders I issued—the caption of this case simply read "Albert Baugh, et al. v. City of Milwaukee, et al." Not until the final draft of the June 16, 1993, order was prepared did I note that Mr. Donegan's name still appeared on the full caption of the case.

Finally, I note that the plaintiffs request that I vacate the judgment because they believe I weighed the evidence and drew certain inferences in favor of the defendants rather than the plaintiffs. Nonsense. Although the plaintiffs have not filed a formal motion for reconsideration, their argument has not persuaded me that vacatur is appropriate. Now, I understand that the plaintiffs feel bad because they lost their case. But they should know they lost it because I honestly concluded that the law was squarely against their position. They didn't get a raw deal because Mr. Donegan was named as a defendant. Simply put, that's ridiculous. If the plaintiffs think I'm wrong on the law, they should go to the court of appeals in Chicago and have my decision reviewed. The Donegan deal here is, at best, a red herring. The matter is undeserving of further attention. The plaintiffs' motion is, accordingly, DENIED.

SO ORDERED.